William A. DuPre, IV (Admitted Pro Hac Vice)
Catherine Harrison King (Admitted Pro Hac Vice)
MILLER & MARTIN PLLC
1170 Peachtree Street N.E., Suite 800
Atlanta, Georgia 30309-7706
(404) 962-6100 (Telephone)
(404) 962-6300 (Facsimle)
bdupre@millermartin.com
cking@millermartin.com

Lawrence E. Rifken, Esq. (VSB #29037)
John T. Farnum, Esq. (VSB #74075)
Greenberg Traurig, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301
rifkenl@gtlaw.com
farnumj@gtlaw.com

*Counsel for UnitedTech Lender Services, Inc.;*
*UTLS Default Services, LLC, f/k/a UTLS DFS, LLC,*
*f/k/a ManagementCo Acquisition, LLC; and UTLS*
*Technology Services, LLC, f/k/a UTLS*
*BITB, LLC, f/k/a TechnologyCo Acquisition, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| LANDAMERICA FINANCIAL GROUP, INC., ET AL., | **CASE NO. 08-35994 (KRH)** |
| DEBTORS. | **JOINTLY ADMINISTERED** |
| LANDAMERICA ONESTOP, INC., PLAINTIFF, | |
| V. | **ADVERSARY PROCEEDING NO. 10-03029 (KRH)** |
| UNITEDTECH LENDER SERVICES, INC.; ORIGINATIONSCO ACQUISITION, LLC; UTLS BITB, LLC (f/k/a TECHNOLOGYCO ACQUISITION, LLC), and UTLS DFS, LLC (f/k/a MANAGEMENTCO ACQUISITION, LLC), | **JURY DEMANDED** |
| DEFENDANTS. | ***RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT COURT JUDGE*** |

## BRIEF OF DEFENDANTS UNITEDTECH LENDER SERVICES, INC., UTLS DEFAULT SERVICES, LLC, AND UTLS TECHNOLOGY SERVICES, LLC IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE

19

## TABLE OF CONTENTS

**Page**

Introduction.................................................................................................................1

Statement of Facts........................................................................................................2

Law and Argument .......................................................................................................7

    I.    The Bankruptcy Court's Jurisdiction to Adjudicate this Adversary
        Proceeding By Trial and Final Order is Limited. ...................................7

    II.    The District Court Should Withdraw the Reference for Cause. ...........................9

    A.    The pleadings on their face establish that this is a non-core, related
        proceeding............................................................................................9

    B.    Withdrawal of the reference will promote judicial economy safely
        within the constitutional limitations of bankruptcy court
        jurisdiction. ........................................................................................15

    C.    Withdrawing the reference will preserve the UTLS Parties' right to
        a jury trial...........................................................................................17

    D.    Withdrawing the reference will discourage forum shopping.................................18

    E.    Withdrawal of the reference will promote the uniform
        administration of the bankruptcy proceedings. .....................................19

    F.    The District Court should withdraw the reference and adjudicate
        this case. ............................................................................................19

Conclusion ...............................................................................................................20

TCO 358,504,593v2 6-30-10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Acolyte Elec. Corp. v. City of New York, 69 B.R. 155 (Bankr. E.D.N.Y. 1986)............................ 9

Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396 (4th Cir. 1992).................................... 9, 15

Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833 (1986) .......................................... 7

Envirolite Enters., Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.,
    53 B.R. 1007 (S.D.N.Y. 1985)....................................................................................... 18

Fed. Ins. Co. v. Parnell (In re Peanut Corp.), 407 B.R. 862 (W.D. Va. 2009) ...................... 14, 15

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989) ...................................... 10, 13, 16, 17

Helmer v. Murray (In re Murray), 149 B.R. 383 (E.D. Va. 1993) ...................................... 10, 16

Humboldt Express v. The Wise Co. (In re Apex Express Corp.),
    190 F.3d 624 (4th Cir. 1999) ................................................................... 7, 10, 11, 12

In re Am. Energy, Inc., 50 B.R. 175 (Bankr. D.N.D. 1985) .......................................................... 10

In re Colorado Energy Supply, Inc., 728 F.2d 1283 (10th Cir. 1984) ........................................ 11

In re Dist. Mem'l Hosp., Inc., 297 B.R. 451 (Bankr. W.D.N.C. 2002 ........................................ 12

In re Lilliefors, 379 B.R. 608 (Bankr. E.D. Va. 2007) ................................................................ 13

In re Malinowski, 156 F.3d 131 (2d Cir. 1998) ........................................................................... 13

In re McCrary & Dunlap Constr. Co., LLC, 256 B.R. 264 (Bankr. M.D. Tenn. 2000) ............... 18

In re U.S. Airways Group, Inc., 296 B.R. 673 (E.D. Va. 2003) ................................................... 9

JPMorgan Chase Bank v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns),
    409 B.R. 649 (Bankr. S.D.N.Y. 2009)................................................................... 11, 14

Langenkamp v. Culp, 498 U.S. 42 (1990) ................................................................................... 13

Levy v. Butler, Payne and Griffin (In re Landbank Equity Corp.),
    77 B.R. 44 (E.D. Va. 1987).................................................................... 7, 10, 11, 16

Millennium Studios, Inc. v. Man Roland, Inc. (In re Millennium Studios, Inc.),
    286 B.R. 300 (D. Md. 2002) .............................................................. 7, 10, 17, 18

Nat'l Enters., Inc. v. Koger P'ship, Ltd. (In re Nat'l Enters., Inc.),
    128 B.R. 956 (E.D. Va. 1991) ............................................................... 11, 12, 16

Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982)......................................................................... 7, 8, 10, 11, 19

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),
    4 F.3d 1095 (2d Cir. 1993)...................................................................... 11, 15

Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568 (1985) .................................... 7, 10

Thompson v. Bd. Trs., Fairfax County Police Officers Ret. Sys. (In re Thompson),
    182 B.R. 140 (Bankr. E.D. Va. 1995)............................................................................. 13

Tidewater Mem'l Hosp., Inc. v. Bowen (In re Tidewater Mem'l Hosp., Inc.),
    106 B.R. 876 (Bankr. E.D. Va. 1989)............................................................................. 13

**Statutes**

11 U.S.C. § 362......................................................................................................................... 12

11 U.S.C. § 541......................................................................................................................... 12

11 U.S.C. § 542(a) .................................................................................................................... 12

ii

28 U.S.C. § 1334(a) ................................................................................................ 6
28 U.S.C. § 1334(b) ................................................................................................ 7
28 U.S.C. § 157(a) .................................................................................................. 7
28 U.S.C. § 157(b)(1) ............................................................................................. 9
28 U.S.C. § 157(b)(2)(A)-(O) ................................................................................ 9
28 U.S.C. § 157(c)(1) .............................................................................................. 8
28 U.S.C. § 157(d) .................................................................................................. 8
28 U.S.C. § 157(e) ................................................................................................ 16

**Rules**

Fed. R. Bankr. P. 5011(a) ...................................................................................... 8
Fed. R. Bankr. P. 9015 .......................................................................................... 16
Fed. R. Civ. P. 38(a) ............................................................................................. 16
LBR 5011-1 ............................................................................................................ 8

**Treatises**

H.L. King, <u>Collier on Bankruptcy</u> ¶ 3.02(3)(d)(i) (16th ed. 2009) ...................... 14, 15
H.L. King, <u>Collier on Bankruptcy</u> ¶ 3.02(3)(d)(ii) (16th ed. 2009) ........................... 9
H.L. King, <u>Collier on Bankruptcy</u> ¶ 3.02(6)(a) (16th ed. 2009) .............................. 11
H.L. King, <u>Collier on Bankruptcy</u> ¶ 5011.01(c) (16th ed. 2009) ............................. 15

TCO 358,504,593v2 6-30-10

## Introduction

The UTLS Parties (defined below) hereby move for withdrawal of the reference so that this lawsuit may be tried in the district court. The substantive claims and defenses central to this lawsuit derive from and turn upon a prepetition contract, specifically an asset purchase agreement. This lawsuit depends upon state law for determination and must be adjudicated in accordance with the Supreme Court's Northern Pipeline v. Marathon holding and the statutory framework enacted in response to the bankruptcy court limitations revealed in Marathon. The UTLS Parties have demanded a jury trial; they have never consented or voluntarily submitted themselves to jurisdiction in the bankruptcy court. In fact, the parties agreed in their prepetition contract to litigate their claims in New York.

The face of the pleadings establish all of the factors this Court has invoked to warrant withdrawal of the reference. Specifically, this lawsuit merely relates to the captioned bankruptcy. It depends upon neither the bankruptcy case nor the bankruptcy code for its existence; the claims at issue would have been properly brought in New York state court. Withdrawal of the reference will most effectively preserve and protect the UTLS Parties' rights to a jury trial and proper adjudication by a court of competent jurisdiction under Article III of the U.S. Constitution. Withdrawal of the reference will also promote judicial economy, the efficient use of the parties' resources, and the uniform administration of the bankruptcy case. The district court should withdraw the reference.

TCO 358,504,593v2 6-30-10

**Statement of Facts**

*The Parties*

UnitedTech Lender Services, Inc. ("UTLS"), through its subsidiaries UTLS Default Services, LLC[1] and UTLS Technology Services, LLC[2] (collectively, the "UTLS Parties"), provides lenders, servicers, and the mortgage industry throughout the United States with a wide array of default loan servicing solutions.

Plaintiff, LandAmerica OneStop, Inc. ("OneStop"), is a Virginia corporation whose ultimate parent is LandAmerica Financial Group ("LFG"). LFG and one of its direct subsidiaries filed a voluntary chapter 11 petition on November 26, 2008. Various other LFG subsidiaries filed for bankruptcy relief at various times commencing in March 2009. A joint plan of liquidation for LFG and its subsidiaries was confirmed November 19, 2009; the OneStop joint plan was confirmed February 16, 2010, pursuant to which Bruce H. Matson, Trustee, has been substituted for OneStop as the plaintiff in this lawsuit.[3] OneStop, its parent, and affiliates have all ceased doing business.

*The APA*

OneStop and its affiliates, OneStop Title Agency and Valuation Services, Inc.; Default Services Company; and MSTD, Inc. (collectively, "Seller")[4], entered into an Asset Purchase Agreement with UTLS Default Services, LLC, f/k/a UTLS DFS, LLC, f/k/a ManagementCo

---

[1] The subsidiary UTLS Default Services, LLC was formerly known as UTLS DFS, LLC, which was formerly known as ManagementCo Acquisition, LLC.

[2] The subsidiary UTLS Technology Services, LLC was formerly known as UTLS BITB, LLC, which was formerly known as TechnologyCo Acquisition, LLC.

[3] For ease of reference, the plaintiff is generally referred to herein as OneStop instead of the Trustee, except where specific reference to the Trustee is more informative.

[4] For reasons that are as yet unclear, only OneStop was named as a plaintiff in this adversary proceeding. Neither of the other Sellers are named as Plaintiffs. A true and accurate copy of the APA, with certain confidential and proprietary information redacted, is submitted herewith as Exhibit "A" in the UTLS Parties' Notice of Filing Exhibits.

2

Acquisition, LLC; and UTLS Technology Services, LLC, f/k/a UTLS BITB, LLC, f/k/a TechnologyCo Acquisition, LLC (the "UTLS Buyers") dated as of October 1, 2009 (the "APA").[5]  In the APA, Seller made certain representations and promises to the UTLS Buyers, many of which were left unfulfilled.  For example, in Section 3.6 Seller promised that the financial statements provided to the UTLS Buyers were "based upon the information contained in the books and records of Seller and fairly present the financial conditions of [Seller's] Business . . . ."  (APA § 3.6.)  Notwithstanding this representation, Seller failed to disclose to the UTLS Buyers certain unpaid liabilities owed to creditors and other unsatisfied obligations, the payment of which was critically important to the preservation of the going concern value and goodwill of the businesses purchased by the UTLS Buyers.

Under Section 2.3(a) of the APA, the UTLS Buyers assumed certain liabilities and obligations of Seller arising on or after October 1, 2009, which were identified on Schedule 2.3(a) of the APA.  (Id. § 2.3(a); id. Sch. 2.3(a).)  Pursuant to Section 2.5 of the APA, Seller agreed to "be responsible for all of the liabilities, obligations, and undertakings of Seller not assumed by Buyers . . . ."  (Id. § 2.5.)  In Section 5.5 of the APA, Seller further agreed to "apply the proceeds from the Cash Purchase Price[6] paid by Buyers to satisfy Seller's liabilities to creditors and other obligations . . . ."  (Id. § 5.5.)

Under Section 5.8 of the APA, Seller agreed and acknowledged that "Buyer shall have the right to use the bank accounts [identified on Schedule 2.3(a) of the APA (the "Bank Accounts")] to operate its businesses and, as of the Closing Date, *Buyer shall be the sole owner and beneficiary of such bank accounts*."  (Id. § 5.8 (emphasis added); id. Sch. 2.3(a).)

---

[5] UnitedTech Lender Services, Inc. ("UTLS") was not a party to the APA.  Although named as a defendant, UTLS is not included as part of the UTLS Buyers.
[6] Certain capitalized terms, such as Cash Purchase Price and Closing Date, are defined in the APA.

3

On or about October 16, 2009, the UTLS Buyers paid the Cash Purchase Price in immediately available funds to Seller, as provided by the APA. As of October 16, 2009, the UTLS Buyers were the sole owners and beneficiaries of the Bank Accounts. (Id. § 5.8.) For ten business days following the Closing Date, OneStop merely had a right to access the Bank Accounts for the sole purpose of reconciling them. (Id.) Pursuant to Section 5.8 of the APA, the UTLS Buyers' obligation to pay Seller any amount of money would only arise ". . . once the parties have agreed on the amounts to be paid to reconcile the bank accounts . . . ." (Id.)

The APA also contains a forum selection clause in which Seller agreed to venue and jurisdiction in New York:

> The parties hereto agree that any suit, action or proceeding brought by either party to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the courts of the State of New York located in New York, New York. Each of the parties hereto submits to the jurisdiction of any such court in any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, this Agreement or the transactions contemplated hereby and hereby irrevocably waives the benefit of jurisdiction derived from present or future domicile or otherwise in such action or proceeding. Each party hereto irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

(Id. § 10.5.)

*The OneStop Bankruptcy*

Contrary to its agreement under the APA, Seller failed and refused to pay its creditors and to satisfy other obligations under the APA. OneStop suddenly filed for bankruptcy on November 4, 2009, less than three weeks after closing the sale to the UTLS Buyers. OneStop

4

did not list any of the UTLS Parties as creditors owed any money in its Schedules of Assets and Liabilities ("Schedules") filed with the bankruptcy court. (See Schedules.) Nor did OneStop include any reference in its Statement of Financial Affairs that the UTLS Parties owed money to it. (See Statement of Financial Affairs.) OneStop further failed to include any of the UTLS Parties or their counsel on any mailing matrix in the OneStop bankruptcy case. OneStop failed to disclose to the Court and its creditors, in either its Disclosure Statement or its Plan of Reorganization ("Plan"), any purported claims against the UTLS Parties. (See Disclosure Statement; Plan.)[7] None of the UTLS Parties ever entered an appearance or filed a proof of claim in either the OneStop bankruptcy case, the bankruptcy case of LFG, or the case of any affiliate debtors.

### The Incomplete, Failed Reconciliation Efforts

After the October 16 closing, the UTLS Parties conferred and communicated by email and telephone with OneStop in a good faith effort to reconcile the Bank Accounts. On December 14, 2009, the UTLS Parties sent their proposed reconciliation to OneStop (the "UTLS Reconciliation"). Only after December 14, 2009, did OneStop give any indication to the UTLS Parties that it would attempt to require strict compliance with the deadline provisions set forth in Section 5.8 of the APA. OneStop now selectively, belatedly, and improperly attempts to invoke these provisions.

Even after the December 14, 2009, strict compliance communication, the UTLS Parties continued communications with OneStop on the reconciliation until early February 2010. No

---

[7] Copies of OneStop's Schedule of Assets and Liabilities, Statement of Financial Affairs, Disclosure Statement, and Plan of Reorganization are submitted herewith as "Exhibit B" in the UTLS Parties' Notice of Filing Exhibits.

5

agreement was ever reached between the parties on the amounts to be paid to reconcile the Bank Accounts.

### The Adversary Proceeding

On February 5, 2010, OneStop walked away from the good faith reconciliation process contemplated under Section 5.8 of the APA and filed suit against the UTLS Parties. The Complaint filed by OneStop contains four counts, the most notable of which are Counts III and IV, respectively entitled: "Breach of Purchase Agreement as Against the Buyers" and "Unjust Enrichment as Against All Defendants." (Compl. ¶¶ 58-68.) The remaining counts seek the collection of amounts allegedly owed under the Bank Accounts, but they are improperly couched as bankruptcy-related turnover and stay violation claims. (Id. ¶¶ 42-57.)

The UTLS Parties' Answer, Defenses and Counterclaim alleges, among other things, that OneStop and its affiliate sellers breached the APA and that the UTLS Buyers lawfully exercised their common law rights of recoupment. (Countercl. ¶¶ 25-54.) The UTLS Parties have demanded a jury trial, objected to venue and jurisdiction and asserted their rights to trial in the District Court. (Answer, Eighteenth Defense and Jury Demand; id. ¶¶ 8, 9; Countercl. ¶ 2.) Though the UTLS Buyers have continued to work to complete the reconciliation (and believe they are nearing completion), efforts since early February have been without OneStop's participation. As such, the reconciliation has not been completed.

**Law and Argument**

I.      **The Bankruptcy Court's Jurisdiction to Adjudicate this Adversary Proceeding By Trial and Final Order is Limited.**

District courts have "original and exclusive jurisdiction of all cases arising under title 11." 28 U.S.C. § 1334(a).  They have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. § 1334(b). District courts have the power to refer to the bankruptcy courts "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . ." Id. § 157(a).  The District Court for the Eastern District of Virginia referred such matters to the bankruptcy court. See Standing Order, entered August 15, 1984.

The Supreme Court's holding in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 92 (1982), established "that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants and subject only to ordinary appellate review." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 584 (1985); see also Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 840 (1986).

In Marathon, Northern Pipeline filed an adversary proceeding against Marathon in bankruptcy court "because [Northern Pipeline] . . . previously filed a petition for reorganization in that court." Marathon, 458 U.S. at 90.  The debtor sought damages for breach of contract, misrepresentation, and "other counts which are the stuff of the traditional actions of common law." Id.  The Court held that allowing the bankruptcy court to "entertain and decide Northern's lawsuit over Marathon's objection" would violate Article III of the Constitution. Id. at 92.

7

In response to <u>Marathon</u>, Congress attempted to address and remedy the problems posed by the limited jurisdiction of the bankruptcy courts by detailing the matters a bankruptcy judge may hear and determine in 28 U.S.C. § 157(b), defining these matters as "core proceedings." <u>See Millennium Studios, Inc. v. Man Roland, Inc. (In re Millennium Studios, Inc.)</u>, 286 B.R. 300, 304 (D. Md. 2002) (citing <u>Humboldt Express v. The Wise Co. (In re Apex Express Corp.)</u>, 190 F.3d 624, 631 (4th Cir. 1999)); <u>Levy v. Butler, Payne and Griffin (In re Landbank Equity Corp.)</u>, 77 B.R. 44, 46 (E.D. Va. 1987). Section 157(c) provides that proceedings that are not core proceedings but are related to a case under title 11 may be heard by a bankruptcy judge for proposed findings of fact and conclusions of law, subject to *de novo* review by the district court. 28 U.S.C. § 157(c)(1). As shown in the following section, Section 157(d) provides for withdrawal of the reference and adjudication of non-core, related proceedings in the district court upon a showing of cause. <u>Id.</u> § 157(d).

In filing its Complaint against the UTLS Parties in the bankruptcy court, OneStop compounded its previous breaches of the APA and ignored the constitutional limitations of bankruptcy court jurisdiction. The Complaint seeks damages for an alleged breach of a prepetition contract, the APA, and the collection of an alleged receivable it claims is due under the APA, (Compl. ¶¶ 42-68), all of which "are the stuff of the traditional actions of common law," <u>Marathon</u>, 458 U.S. at 92. The APA required that OneStop bring any such action in New York. (APA § 10.5.) OneStop instead filed its complaint in bankruptcy court. The UTLS Parties have never consented to the jurisdiction of the bankruptcy court. To the extent the Trustee attempts to force the UTLS Parties to defend the Complaint and litigate their counterclaims in

8

the bankruptcy court without their consent, the Trustee must yield to the limits of bankruptcy court jurisdiction made manifest in <u>Marathon</u> and addressed in 28 U.S.C. § 157.

## II.    The District Court Should Withdraw the Reference for Cause.

The District Court's reference to the bankruptcy court may be withdrawn "for cause shown" upon the filing of a motion.  28 U.S.C. § 157(d); Fed. R. Bankr. P. 5011(a); LBR 5011-1. While "cause" is not statutorily defined, courts have generally weighed six factors, including: "(i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial." <u>In re U.S. Airways Group, Inc.</u>, 296 B.R. 673, 681 (E.D. Va. 2003).  The District Court in <u>U.S. Airways</u> held that these factors should be weighed equally on a case-by-case basis.  <u>Id.</u> at 682.  All of these factors, and more, establish cause for withdrawal of the reference.[8]

### A.    The pleadings on their face establish that this is a non-core, related proceeding.

Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1).  A proceeding that is "related to a case under title 11" is not a core proceeding, and bankruptcy judges may not constitutionally determine such matters.  <u>See</u> <u>Acolyte Elec. Corp. v. City of New York</u>, 69 B.R. 155, 163 (Bankr. E.D.N.Y. 1986) (noting that the constitutional ability of bankruptcy judges to determine "related to" or "non-core" matters was found lacking in <u>Marathon</u>) (citations omitted)).  Section 157(b)(2) provides a non-exclusive

---

[8] The factors are discussed in a slightly different order than that presented in <u>U.S. Airways</u>.  The factors relating to judicial economy and the parties' resources are addressed together in subsection <u>B</u>.

9

list of core proceedings.   28 U.S.C. § 157(b)(2)(A)-(O).   While OneStop asserts that its
Complaint is a core proceeding, it does not identify under which subsection its claims are
asserted to be "core."   (Compl. ¶ 8.)  OneStop's all encompassing, virtually unlimited view of
core proceedings, "if followed, would eviscerate Marathon." H.L. King, Collier on Bankruptcy ¶
3.02(3)(d)(ii) (16th ed. 2009).   The Fourth Circuit and this Court, though, have correctly relied
upon subsections *(b)(2)(B)* through *(N)*, instead of the catch-all categories in *(b)(2)(A)* and *(O)*,
when defining core proceedings.  See Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 401
(4th Cir. 1992) (avoiding reliance upon subsections *(b)(2)(A)* and *(O)* in order to avoid the risk of
exceeding the constitutional limitations of Marathon); Helmer v. Murray (In re Murray), 149
B.R. 383, 386 (E.D. Va. 1993); Levy v. Butler, Payne and Griffin (In re Landbank Equity Corp.),
77 B.R. 44, 47-48 (E.D. Va. 1987) ("A common sense interpretation of the term 'core' would
dictate that it include only those proceedings which were specifically defined in subsection
*(b)(2)(B)* through *(N)* or in the Bankruptcy Code.") (quoting In re Am. Energy, Inc., 50 B.R. 175,
178 (Bankr. D.N.D. 1985)).

The "core" and "non-core" distinction under Section 157 must be interpreted with
Marathon in mind.  See Humboldt Express v. The Wise Co. (In re Apex Express Corp.), 190
F.3d 624, 631 (4th Cir. 1999).  In making this interpretation, one must consider whether a matter
involves public rights or private rights.  Id. at 632 (noting that this distinction was a key aspect of
Marathon); see also Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 53-55 (1989) (stating that
analysis is same for Article III and Seventh Amendment jury trial rights and reaffirming
importance of public rights/private rights distinction); but see Thomas v. Union Carbide Agric.

10

Prods. Co., 473 U.S. 568, 585-86 (1985) (stating that public rights/private rights distinction is not determinative for Article III purposes).

The "restructuring of debtor/creditor relationships . . . is at the core of the federal bankruptcy power" and is a public right. Marathon, 458 U.S. at 71. When a dispute has only an indirect impact on the public act of restructuring and is a consideration of the liability of two private parties, then the resolution of the private right is a non-core matter. Apex, 190 F.3d at 632-33 (analyzing whether a collection action based upon a prepetition contract was core or non-core and holding same to be non-core); see Millennium Studios, Inc. v. Man Roland, Inc. (In re Millennium Studios, Inc.), 286 B.R. 300, 304-5 (D. Md. 2002) (relying upon substantive law of collection action to hold that adversary proceeding filed against party that financed the sale of a faulty printing press, which led debtor to seek bankruptcy relief, was non-core); but cf. JPMorgan Chase Bank v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns), 409 B.R. 649, 657 (Bankr. S.D.N.Y. 2009) (holding that adversary proceeding asserting breach of prepetition credit facility was core because debtor's ability to reorganize hinged upon reinstatement of said credit facility).

OneStop's Complaint is an action for the recovery of damages based upon the alleged breach of the APA and for unjust enrichment. (Compl. ¶¶ 58-68.) This is nothing more than a breach of contract action between two private parties. Courts have repeatedly held that claims premised upon breach of a prepetition contract are based on state law and are therefore non-core proceedings. See Marathon, at 458 U.S. at 90-92; Apex, 190 F.3d at 631-32; Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir. 1993); Nat'l Enters., Inc. v. Koger P'ship, Ltd. (In re Nat'l Enters., Inc.), 128 B.R. 956, 961

11

(E.D. Va. 1991) (finding that an alleged post-petition breach of contract action is a non-core proceeding when the contract was entered into prepetition).

The substantive rights, claims and defenses central to adjudication of this lawsuit in no way depend upon either the bankruptcy code or the above-captioned bankruptcy case for their existence. See Landbank, 77 B.R. at 48 ("Related proceedings are 'those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or state court.'") (quoting In re Colorado Energy Supply, Inc., 728 F.2d 1283, 1286 (10th Cir. 1984)). OneStop's coy attempt to cloak its claims as a title 11 turnover action and stay violation does not change the substance of the claims. (Compl. ¶¶ 42-57); see H.L. King, Collier on Bankruptcy ¶ 3.02(6)(a) (16th ed. 2009) ("The nature or source of the cause of action, not the governing substantive law," determines whether an action is a core or related proceeding.). These claims amount to nothing more than an attempt to disguise the true substance of the claims. See Apex, 190 F.3d at 631 (analyzing holdings that characterize accounts receivable claims as core turnover proceedings and concluding that "the better approach is that such claims, at least when grounded in state law and arising prepetition, must be treated as non-core."); see Nat'l Enters, 128 B.R. at 959-60 (determining that proceeding was non-core because the plaintiff's turnover claim was premised upon alleged breach of contract).

OneStop overlooks a fatal flaw in trying to remake its claims into an action for turnover under the bankruptcy code. Specifically, OneStop acknowledged and agreed in the APA that it did not own the Bank Accounts it now demands be turned over to it. (See APA § 5.8 (providing the UTLS Buyers with the right to use the Bank Accounts to operate their businesses and, "as of the Closing Date, [the UTLS] Buyer[s] shall be the sole owner and beneficiary of such [B]ank

12

[A]ccounts"); id. Sch. 2.3(a).)  At all relevant times, the Bank Accounts have been owned by the UTLS Parties.  OneStop has no right to turnover of property which the estate does not own.  11 U.S.C. §§ 541; 542(a) (requiring property subject to turnover to be that which trustee can "use, sell, or lease under section 363").

For this same reason, claims for the alleged breach of a prepetition contract cannot be remanufactured into a stay violation claim.  By providing ownership to the UTLS Buyers, the Seller contractually acknowledged that the Bank Accounts are not property of the estate.  11 U.S.C. § 541; (APA § 5.8; id. Sch. 2.3(a).)  The UTLS Parties' possession and use of bank accounts which they own do not amount to a stay violation.  See 11 U.S.C. § 362.[9]  Likewise, the UTLS Parties' exercise of their common law rights of recoupment further does not amount to a violation of the automatic stay.  (Countercl. ¶¶ 36-44); see In re Dist. Mem'l Hosp., Inc., 297 B.R. 451, 454 (Bankr. W.D.N.C. 2002) (citing In re Malinowski, 156 F.3d 131 (2d Cir. 1998)); see Thompson v. Bd. Trs., Fairfax County Police Officers Ret. Sys. (In re Thompson), 182 B.R. 140, 147 (Bankr. E.D. Va. 1995) (viewing recoupment as a "nonstatutory exception to the automatic stay"); see also Tidewater Mem'l Hosp., Inc. v. Bowen (In re Tidewater Mem'l Hosp., Inc.), 106 B.R. 876, 881 (Bankr. E.D. Va. 1989).

Nor do the counterclaims filed by the UTLS Parties give rise to a core proceeding.  The UTLS Parties' counterclaims assert state law claims for breach of contract, breach of good faith and fair dealing, specific performance, unjust enrichment, and a declaratory judgment based upon their state law rights of recoupment.  (Countercl. ¶¶ 25-54.)  While the UTLS Parties

---

[9] It should be noted that of all of the Seller parties, only OneStop is in bankruptcy.

13

counterclaims were filed as part of their Answer to the Complaint at no time have they consented to jurisdiction or venue in the bankruptcy court. (Id. ¶ 2.)

OneStop made no mention of its alleged claims against the UTLS Parties in its Schedules, its Statement of Financial Affairs, its Disclosure Statement, or its, now confirmed, Chapter 11 Plan. (See generally Schedules; Statement of Financial Affairs; Disclosure Statement; Plan); see also In re Lilliefors, 379 B.R. 608, 611 (Bankr. E.D. Va. 2007) (discussing judicial estoppel). The UTLS Parties never filed a proof of claim in OneStop's bankruptcy nor in any of the bankruptcies filed by its parent company, LFG, or its affiliates.[10] See Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990) (holding that when a creditor files a proof of claim it brings itself within the "equitable jurisdiction of the [b]ankruptcy [c]ourt"); see also Granfinanciera, 492 U.S. at 59 n.14 (noting that when a claim is submitted to the bankruptcy court that creditors subject themselves to the court's power to disallow such claims). OneStop's decision not to mention alleged claims against the UTLS Parties (or, vice versa, schedule the UTLS Parties as creditors) in the bankruptcy case further evidences the private nature of the parties' respective claims, defenses, and counterclaims. The UTLS Parties did not file a proof of claim and OneStop did not assert these claims in its pleadings because they were neither intimately related to the administration of the bankruptcy estate nor do they impact the terms of the confirmed plan. But cf. Charter Commuc'ns, 409 B.R. at 652 (noting that the bankruptcy court suspected that the failure to file a claim was an attempt to avoid bankruptcy court jurisdiction, although plaintiff's claim impacted the confirmation of debtor's plan). Even if the UTLS Parties had filed a proof of claim: "Footnote 31 in the plurality opinion in Marathon suggests that there are constitutional

---

[10] Although the UTLS Buyers bought assets from a company whose immediate parent company was in Chapter 11, such action does not equate to a "direct impact" upon or "intimate involvement" with a bankruptcy reorganization. OneStop notably filed for bankruptcy relief after the closing of the sale with the UTLS Buyers.

14

doubts as to whether filing a proof of claim can have...[the] effect [of subjecting the claimant to core treatment of all counterclaims that may be filed by a trustee]." H.L. King, <u>Collier on Bankruptcy</u> ¶ 3.02(3)(d)(i) (16th ed. 2009).

This lawsuit amounts to no more than a private dispute between the parties over their respective rights and obligations under a prepetition contract. That OneStop filed bankruptcy after the sale closed and the UTLS Buyers paid the Sellers does not make the lawsuit a core bankruptcy proceeding. The lawsuit is instead, at most, a related proceeding.

     *B.*     *Withdrawal of the reference will promote judicial economy safely within the constitutional limitations of bankruptcy court jurisdiction.*

Withdrawal of the reference will promote judicial economy and prevent needless expenditures of the resources of both the estate and the UTLS Parties. Withdrawal of the reference to the bankruptcy court is "a more efficient use of the parties and the Court's resources" since bankruptcy courts may not enter final orders in non-core proceedings. <u>Fed. Ins. Co. v. Parnell (In re Peanut Corp.)</u>, 407 B.R. 862, 866 (W.D. Va. 2009) (balancing "for cause" factors and determining that non-core interpleader action should be resolved by district court). If the reference is not withdrawn, then the parties would be required to litigate this contract action twice: once in bankruptcy court and then in district court under *de novo* review. <u>Id.</u> (citing <u>Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)</u>, 4 F.3d 1095, 1101 (2d Cir. 1993) (noting that the district court's *de novo* review of non-core matters could create "unnecessary costs [that] could be avoided by a single proceeding in district court.")). As the district court will be obliged to conduct a *de novo* review of the bankruptcy court's findings and holdings, allowing this case to proceed in bankruptcy court will result in duplicative efforts and

15

costs. See 28 U.S.C. § 157(c)(1); <u>Canal Corp. v. Finnman (In re Johnson)</u>, 960 F.2d 396, 399 (4th Cir. 1992); <u>Orion Pictures</u>, 4 F.3d at 1101.

Moreover, *de novo* review by the district court after adjudication in the bankruptcy court simply is not and cannot be the same as a trial or adjudication in the district court in the first instance. "For example, if a bankruptcy court issues an order that is appealable during the litigation, or a party seeks leave to file an interlocutory appeal, the district court may be placed in the position of presiding as an appellate court in tandem with its role of presiding over the case." H.L. King, <u>Collier on Bankruptcy</u> ¶ 5011.01(c) (16th ed. 2009). As noted in the preceding subsection, even if the UTLS Parties had filed a proof of claim, which they did not, "[f]ootnote 31 in the plurality opinion in <u>Marathon</u> suggests that there are constitutional doubts as to whether filing a proof of claim can have...[the] effect [of subjecting the claimant to core treatment of all counterclaims that may be filed by a trustee]." <u>Id.</u> ¶ 3.02(3)(d)(i). It follows that forcing parties, who did not even file a proof of claim, to litigate state law claims and defenses in bankruptcy court over their objection raises "constitutional doubts."

Additionally, as discussed in subsection *C* below, the bankruptcy court cannot conduct a jury trial without the parties' consent. The statutory palliative of *de novo* review merely adds a procedural layer without providing the UTLS Parties with a jury trial or adjudication by an Article III Court. Attempting to force a square peg into a round hole by adjudicating this lawsuit in bankruptcy court risks exceeding the constitutional limits of bankruptcy jurisdiction while also placing additional demands on scarce judicial resources and inflicting needless additional costs and delays on the parties. The Trustee and his counsel are located in Richmond, so withdrawing the reference will not cause them to litigate this matter in an inconvenient forum. Withdrawing

16

the reference will promote judicial economy and the efficient use of the parties' resources within the applicable jurisdictional and constitutional constraints made manifest in the Marathon decision.

C.     *Withdrawing the reference will preserve the UTLS Parties' right to a jury trial.*

Federal Rule of Bankruptcy Procedure 9015, which incorporates Federal Rule of Civil Procedure 38, explicitly preserves jury trial rights: "(a) RIGHT PRESERVED. The right of trial by jury as declared by the Seventh Amendment to the Constitution... is preserved to the parties inviolate." Fed. R. Civ. P. 38(a); see Fed. R. Bankr. P. 9015. Jury trial rights cannot be deprived in causes of action involving private rights. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 51 (1989) (holding that Congress cannot deprive a party of its jury trial rights unless a cause of action involves public rights). As such, bankruptcy courts cannot conduct a jury trial of a non-core proceeding without the consent of the parties. 28 U.S.C. § 157(e); see also Helmer v. Murray (In re Murray), 149 B.R. 383 (E.D. Va. 1993); Nat'l Enters., Inc. v. Koger P'ship, Ltd. (In re Nat'l Enters., Inc.), 128 B.R. 956, 963 (E.D. Va. 1991); Levy v. Butler, Payne and Griffin (In re Landbank Equity Corp.), 77 B.R. 44, 49 (E.D. Va. 1987) (noting jury trial demand in decision to withdraw the reference).

The UTLS Parties made a timely demand for a jury trial under Bankruptcy Rule 9015(a). (Answer, Eighteenth Defense and Jury Demand.) The breach of contract claims raised by OneStop and the claims and defenses of recoupment and unjust enrichment raised by the UTLS Parties are actions involving private rights subject to a trial by jury. Granfinanciera, 492 U.S. at 51. Further, the UTLS Parties never waived their jury trial right by filing a proof of claim. Id.

D.      *Withdrawing the reference will discourage forum shopping.*

Withdrawal of the reference will, in fact, thwart OneStop's attempt to forum shop by filing this adversary proceeding in the Bankruptcy Court for the Eastern District of Virginia instead of in the contractually agreed forum.[11]   The APA, the document at the center of OneStop's claims against the UTLS Parties, contains a forum selection clause under which the Seller and the UTLS Buyers agreed to litigate disputes "in the courts of the State of New York located in New York, New York."[12]   (APA § 10.5.)  Public policy favors the enforcement of forum selection clauses.  Millennium Studios, Inc. v. Man Roland, Inc. (In re Millennium Studios, Inc.), 286 B.R. 300, 307 (D. Md. 2002), (holding that the forum selection clause in contract should be enforced in non-core matter and providing parties with opportunity to show why District Court of Maryland should not exercise its discretion to transfer the matter to the Northern District of Illinois, as consistent with the forum selection clause).  While there is a public policy to centralize bankruptcy proceedings, this policy promotes the centralization of proceedings in bankruptcy court and not a judicial district.  Id. (reviewing In re McCrary & Dunlap Constr. Co., LLC, 256 B.R. 264 (Bankr. M.D. Tenn. 2000); Envirolite Enters., Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007 (S.D.N.Y. 1985)).  In any event, withdrawing the reference will discourage, not encourage, attempts to forum shop. This factor, like the others, resolves in favor of withdrawing the reference.

---

[11] OneStop appears to cherry-pick the provisions of the APA it finds most convenient.  While it attempts to rely upon the reconciliation provisions of section 5.8 (albeit while misinterpreting these provisions), it ignored the forum selection provisions of section 10.5.

[12] The UTLS Parties objected to venue and jurisdiction in their Affirmative Defenses and they hereby reserve their rights and objections as to venue and jurisdiction.  Notwithstanding OneStop's agreement to New York as the forum for litigating disputes under the APA, the UTLS Parties are willing to consider consenting to venue in the Eastern District of Virginia, provided that the reference is withdrawn so that the case is tried in the district court.

18

E.    *Withdrawal of the reference will promote the uniform administration of the bankruptcy proceedings.*

Withdrawal of the reference will promote the uniform administration of bankruptcy proceedings. The bankruptcy plans of OneStop, LFG, and its affiliates have been confirmed. Their cases have been concluded with the Trustee responsible for the remaining liquidation and wind down of the estates. This lawsuit is just one of many cases that the Trustee will need to resolve before closing the OneStop bankruptcy case. The asset purchase transaction evidenced by the APA was closed and funded nearly a year ago. Resolving this lawsuit in district court will therefore have no meaningful impact upon the resolution and conclusion of the OneStop bankruptcy case, other than to relieve the bankruptcy court of one pending adversary proceeding related to the LFG bankruptcy cases. It would be difficult for OneStop or the Trustee to argue otherwise: OneStop never scheduled the UTLS Parties as creditors or persons indebted to it in its Schedules, Statement of Financial Affairs, Plan, or Disclosure Statement, and the UTLS Parties neither filed a proof of claim nor entered an appearance in the bankruptcy case.

Furthermore, for the reasons stated in subsection *B* and *C* above, forcing the UTLS Parties to litigate this lawsuit in bankruptcy court over their objection is fraught with risk that the constitutional limits of bankruptcy jurisdiction will be exceeded. Rather than promote the uniform administration of bankruptcy proceedings, the result of keeping this lawsuit in bankruptcy court would be just the opposite.

F.    *The District Court should withdraw the reference and adjudicate this case.*

In Marathon, the Supreme Court observed that "where Congress creates a substantive right, pursuant to one of its broad powers to make laws, Congress may have something to say about the proper manner of adjudicating that right." Marathon, 458 U.S. 50, 83 n.35. Congress

19

did not create the substantive rights, claims or defenses at issue in this lawsuit. Here, the parties' rights arise out of, and should be determined on the basis of, a written prepetition contract and applicable state law.

This lawsuit is not, at bottom, a matter of federal bankruptcy law, and it should not be treated or adjudicated as such. To argue otherwise needlessly tests the constitutional limits of bankruptcy jurisdiction. Withdrawing the reference neatly avoids the constitutional questions and other problems which necessarily stem from forcing an adjudication in the bankruptcy court.

### Conclusion

For the foregoing reasons, the Court should grant the UTLS Parties' motion and withdraw the reference so that this case may be tried in the district court.

*[Remainder of page intentionally left blank]*

TCO 358,504,593v2 6-30-10

Dated this 30th day of June, 2010.

/s/ Lawrence E. Rifken
Lawrence E. Rifken, Esquire (VSB #29037)
John T. Farnum, Esquire (VSB #74075)
Greenberg Traurig, LLP
1750 Tysons Boulevard
Suite 1200
McLean, VA 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301

-and-

William A. DuPre, IV (Admitted Pro Hac Vice)
GA Bar No. 234882
bdupre@millermartin.com
Catherine Harrison King (Admitted Pro Hac Vice)
GA Bar No. 331752
cking@millermartin.com
1170 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-7706
(404) 962-6100 (Telephone)
(404) 962-6300 (Facsimile)

*Counsel for UnitedTech Lender Services, Inc.;
UTLS Default Services, LLC, f/k/a UTLS DFS, LLC,
f/k/a ManagementCo Acquisition, LLC; and UTLS
Technology Services, LLC, f/k/a UTLS
BITB, LLC, f/k/a TechnologyCo Acquisition, LLC*

21

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a true and complete copy of the foregoing **BRIEF OF DEFENDANTS UNITEDTECH LENDER SERVICES, INC., UTLS DEFAULT SERVICES, LLC, AND UTLS TECHNOLOGY SERVICES, LLC IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE** by electronic mail upon all parties receiving notice by CM/ECF and upon counsel and/or parties of interest by electronic mail and by depositing the same in the United States Mail with sufficient postage affixed thereto to ensure proper delivery and addressed as follows:

Christopher L. Perkins
LeClairRyan, A Professional Corporation
951 East Byrd Street, 8th Floor
Richmond, VA 23219

Terence K. McLaughlin
Wilkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

This 30th day of June, 2010.

/s/ John T. Farnum
John T. Farnum

TCO 358,504,593v2 6-30-10